UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY DUANE WEED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:15-cv-140-RLW |
| | ) |
| CORPORAL T.R. JENKINS, *et al.* | ) |
| | ) |
| Defendants. | ) |

**STIPULATION OF FACTS**
**FOR PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Come now the parties by counsel and state for their Stipulation of Facts for Plaintiff's first amended motion for preliminary injunction [ECF No. 20-1] pursuant to the Court's Order as amended [ECF Nos. 41 and 44]:

Based on discovery, Plaintiff has amended its motion to the Court to seek a preliminary injunction against Defendants to prevent the Missouri State Highway Patrol from (1) ordering law-abiding political protesters on overpasses to move or disperse based on trooper judgments as to traffic safety absent a violation of law, and (2) from arresting protesters who lawfully oppose an order to move issued on that basis pursuant to RSMo. 43.170.

Discovery is ongoing and the parties agree that this stipulation is not binding on them at trial should new evidence arise that changes their good faith understanding of the facts.

To promote judicial economy and a clean record, the parties stipulate as follows as to certain facts:

1. On August 17, 2013, Plaintiff gathered with a group of citizens to protest the policies of President Barack Obama on the sidewalk of a highway overpass over Interstate 70 in St. Charles County, Missouri.

1

2. The protest was part of a statewide (and nationwide) series of protests organized that day through online social media such as Facebook known as "Overpasses Against Obama" and/or "Overpasses for America."

3. Plaintiff and other protesters displayed signs, banners and flags to cars on the overpass and driving below on the interstate. The written messages were political in nature. Plaintiff held a sign that stated "Impeach Obama".

4. None of those signs or flags was unusually graphic, obscene or provocative, *e.g.,* there were no photographs of a mutilated fetus.

5. The parties dispute whether the protestors and/or their signs invited motorists to honk their horns, and so that fact is not part of this Stipulation.

6. Traffic congestion that day was heavier than normal on Interstate 70. The Fifth Street exit near that overpass was "backed up" with cars, likely headed to the nearby Festival of the Little Hills in St. Charles.

7. There was also Interstate construction below and on the adjacent Fifth Street exit that "backed up" traffic.

8. Plaintiff was the first protestor to arrive at the overpass that morning, shortly before 10:00 a.m. Other protestors soon joined him.

9. At some point in the morning, St. Charles police officers (not parties here) ordered the protestors to move from the overpass sidewalk to a nearby commuter parking lot behind a fence.

10. The protestors did move to that commuter parking lot.

11. The protestors believed that the Motorists could not see the protestors' signs while the protestors were in that parking lot.

12. The protestors were dissatisfied with their ability to share their political messages with motorists from the parking lot location.

13. At some point, a St. Charles police supervisor came to the parking lot.

14. The parties cannot stipulate as to what exactly was said between the supervisor and the protestors, but after the conversation the protestors were allowed by the St. Charles police to return to the overpass sidewalk and did so.

15. Several accidents occurred that day on I-70 around or below the overpass.

16. The first accident occurred before any of the protestors arrived on the overpass, that is before 10:00 a.m., in the eastbound lane of I-70 near the Fifth Street exit and the "backed up" traffic. It was investigated around 9:30 a.m. by Defendant Cpl. T.R. Jenkins.

17. Missouri State Highway Patrol Trooper E. Grass investigated a second two-car accident around 11:15 a.m. (Trooper Grass is not a party here.)

18. Shortly thereafter, Trooper Grass noticed a third accident involving a car and a motorcycle which her colleague Trooper K.L. Brown investigated.

19. In her police report, Trooper Grass indicated that at the time she could not determine a "direct correlation" between the protests above and the accidents below.

20. Around 1:20 p.m. a fourth accident occurred between three cars rear-ending one another. The sister of one of the motorists in the middle car, who was sitting in the passenger seat, wrote in her statement to Trooper E. Grass that the protestors were a distraction to the motorists.

21. At some point, Trooper Grass told Defendant Cpl. Jenkins, who was not yet at the scene, that she believed the protests contributed to a traffic safety hazard. The parties cannot stipulate as to what factors informed her determination.

22. Around 2:00 p.m. Defendant Cpl. Jenkins arrived at the overpass.

23. At some point in time an unknown Missouri Department of Transportation official (not a party here) told Defendant Cpl. Jenkins that the protests were worsening congestion on I-70 and thus were a traffic safety hazard.

24. Defendant Cpl. Jenkins and other MSHP troopers believed Plaintiff and his fellow protesters were distracting drivers below on Interstate 70, and had caused or contributed to several traffic accidents in the area.  The parties cannot stipulate as to what factors informed this belief.

25. Defendant Cpl. Jenkins did not believe that Plaintiff or the other protestors intended to cause a traffic safety hazard, although he did believe that Plaintiff and the other protestors intended to engage the attention of motorists with their signs and waving.

26. There are numerous MODOT signs near the overpass directing motorists.

27. That day, there were also numerous construction signs near the overpass directing motorists.

28. There are numerous commercial billboards near the overpass, some with flashing and changing signs, all directed at engaging the attention of motorists.

29. There are several high-rise commercial buildings near the overpass, some with flashing signs for casinos, restaurants, and gas stations, all directed at engaging the attention of motorists.

30. Plaintiff was asked by members of the Missouri State Highway Patrol, including Defendant Cpl. Jenkins, to move from the overpass.

31. Defendant Cpl. Jenkins stated to Plaintiff, and Plaintiff understood, that Defendant Cpl. Jenkins' motivation for his request to move was Defendant Cpl. Jenkins' belief that the protesters were causing or contributing to accidents in the area.

32. The parties cannot yet stipulate to what discrete, articulable criteria formed the basis of Defendant Cpl. Jenkins' belief.

33. Plaintiff was not asked to move by the troopers because the troopers disagreed with his politics or found his message offensive.

34. Plaintiff asked Defendant Cpl. Jenkins if he and the protestors could move to the sidewalk across the overpass so that they could instead broadcast their political message to traffic headed the other direction, which was uncongested and free of accidents.

35. Defendant Cpl. Jenkins suggested that the protestors disperse and return another day to protest.

36. Then, with particularity, Defendant Cpl. Jenkins ordered the protestors to disperse.

37. Plaintiff asked what law he and the protestors were breaking.

38. Defendant Cpl. Jenkins did not cite to any underlying unlawful activity.

39. Plaintiff refused to leave the overpass and opposed Cpl. Jenkins' order by verbally disputing or questioning the basis for the order.

40. The parties stipulate the plaintiff's refusal to leave the overpass was the act that formed his opposition to Cpl. Jenkins' order.

41. Plaintiff did not engage in any acts of violence or physical resistance.

42. Plaintiff did not state any fighting words or incite others to violence.

43. Defendant Cpl. Jenkins arrested Plaintiff for violating RSMo. 43.170 for willfully opposing or resisting the lawful order of a trooper.

5

44. One other protestor was arrested under the same statute (as well as, in that case, a second charge).

45. Plaintiff did not resist arrest.

46. Plaintiff was conveyed to the St. Charles county jail by St. Charles policemen.

47. Defendant Cpl. Jenkins processed Plaintiff at the St. Charles county jail.

48. Plaintiff was held for roughly 24 hours in the St. Charles County jail.

49. Plaintiff was never issued a citation or charged with a violation of law.

50. Since the date of his arrest, Plaintiff has returned to the same overpass to protest as part of the same "Overpasses against Obama" group.

51. Plaintiff has also gone to other overpasses in the greater St. Louis region to join in "Overpasses against Obama" protests.

52. Plaintiff has not been arrested for doing so.

53. Nevertheless, Plaintiff states he is afraid he will be arrested in the future.

54. Defendant Col. Johnson is the chief policymaker for the Missouri State Highway Patrol.

55. Col. Johnson issues, for example, general orders.

56. Col. Johnson supervises those who train Highway Patrol troopers in the law and the Constitution.

57. Col. Johnson understands that his troopers do not receive any training as to protestors, or temporary signs and flags on highway overpasses. That is, there is no particularized training on the facts here even if troopers do received general training on protests and crowd control.

58. Col. Johnson is aware that Plaintiff and others engaged in protests around the state on highway overpass sidewalks on the date of the incident.

6

59. Col. Johnson is not aware of any statute that forbids such protests, or the display or affixing of signs and flags upon the overpasses.

60. Particularly, Col. Johnson considers each aspect of Plaintiff's protest to be lawful, *e.g.,* it was a lawful assembly; the display of flags on the overpass is lawful; the display of banners is lawful.

61. Col. Johnson considers standing around on an overpass to engage in protest to be lawful.

62. Generally speaking, Col. Johnson considers it an improper order not in the discharge of a trooper's duties if a trooper were to order law-abiding overpass protestors to disperse.

63. Col. Johnson, however, believes that the presence of certain "traffic safety" hazards such as construction or heavy traffic or accidents may make otherwise lawful protests become distractions to motorists and therefore themselves become "traffic safety hazards".

64. Col. Johnson does not consider Missouri Department of Transportation signs to be distraction because they are "necessary." Col. Johnson considers billboards to be less distracting than overpass protests because they are off of the right-of-way.

65. There is not a fixed list of discrete criteria for a trooper to use in determining whether or not a lawful protest becomes a traffic safety hazard. Rather, Col. Johnson expects his troopers to use "reasonable judgment" based on their "experience" and articulable grounds for their determination.

66. Col. Johnson considers the determination of what constitutes a traffic safety hazard to be within trooper discretion, fairness, and individual judgment.

67. Similarly, Col. Johnson does not believe that there is a discrete list of fixed criteria for an otherwise law-abiding protestor to use in knowing whether or not his conduct in displaying a political protest sign or flag creates a traffic safety hazard.

7

68. Col. Johnson believes that if the trooper and protestors disagree in their belief as to whether the display of the signage creates a traffic safety hazard, then the trooper's judgment trumps the protestors.

69. If a trooper can articulate a traffic safety hazard, or suggest a reasonable ground that the protest is a traffic safety hazard, then Col. Johnson deems it a proper discharge of the trooper's duties for the trooper to order a protestor to cease protesting and to move.

70. Indeed, should the protestor oppose the order by refusing to move (but not by physical acts of violence or resistance, nor fighting words, nor incitements to violence), Col. Johnson believes there is sufficient probable cause to arrest the protestor pursuant to RSMo. 43.170.

71. This is true in Col. Johnson's belief as a policymaker even if the protestor is engaging in no underlying violation of law.

72. The parties agree that Plaintiff and the protestors were not intentionally or criminally causing a traffic safety hazard below such as a car accident.

73. While Col. Johnson believes the first sentence of RSMo. 43.170 applies only to vehicle drivers and animal riders and not to sidewalk pedestrians, he also believes that the second sentence of the statute applies to pedestrians and to orders that troopers give pedestrians. Col. Johnson expects his troopers to read the statute and enforce it in this manner.

74. Col. Johnson is aware that on the day of Plaintiff's arrest that coordinated "Overpasses Against Obama" overpass protests were held statewide across Missouri, for example in each of Springfield and Rolla, and that other troops of the Highway Patrol observed such protests that day.

75. Col. Johnson is aware of 23 arrests in 2014 by MSHP troopers for violations of RSMo. 43.170.

76. Other than the two arrests at this incident, Col. Johnson is not aware of other arrests under a similar fact pattern related to protestors.

77. Col. Johnson assumes that the protestors gathered on the overpass sidewalk to communicate their message to hundreds of cars; that the protest would be less effective in a walled-in parking lot where no motorist could see the protestors; and that there are no particularized trooper policies on how to deal directly with such overpass protestors.

78. Particularly, there is no law and no policy against overpass sidewalk protestors other than unlawful assembly or purporting to commit a crime.

Respectfully submitted,

*Co-Counsel for Plaintiff*

   /s/ Hugh A. Eastwood   .
Hugh A. Eastwood, 62058MO
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri  63105-3860
heastwood@eastwoodlawstl.com
Fax     (314) 863 5335
Vox     (314) 809 2343

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

*Counsel for Defendants*

/s/ H. Anthony Relys
H. Anthony Relys, 63190MO
Assistant Missouri Attorney General

9

P.O. Box 861
St. Louis, MO 63188
Tel: (314) 340-7861
Fax: (314) 340-7029
Tony.Relys@ago.mo.gov