UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY DUANE WEED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:15CV140 RLW |
| CORPORAL T.R. JENKINS, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's First Amended Motion for Preliminary Injunction (ECF No. 22). The Court held a hearing on the motion on September 15, 2015, and the parties submitted Proposed Findings of Fact and Conclusions of Law. Upon consideration of the arguments presented at the hearing and in the written briefs, the Court will deny Plaintiff's motion.

## FINDINGS OF FACT

The parties filed a 9-page Stipulation of Facts. The Court hereby adopts and incorporates by reference those facts as stipulated by the parties. (Stipulation of Facts, ECF No. 46) For context, the Court sets forth the following facts:

On the morning of August 17, 2013, Plaintiff and a group of citizens gathered on the sidewalk of a highway overpass on Interstate 70 ("I-70") in St. Charles County, Missouri to protest the policies of President Barack Obama. The group was called "Overpasses against Obama." Plaintiff and other protesters displayed political signs, banners, and flags to cars on the overpass and driving on the interstate below. Plaintiff's sign stated "Impeach Obama."

Traffic congestion on I-70 that particular day was heavier than normal due to accidents, highway construction, and local events. St. Charles police officers ordered the protesters to move from the overpass sidewalk to a nearby commuter parking lot for some time, but the police subsequently allowed the protesters to return to the overpass sidewalk. However, that afternoon, a Missouri Highway Patrol Trooper and a Missouri Department of Transportation official told Defendant Corporal T.R. Jenkins that the protests worsened congestion and contributed to a traffic safety hazard. As a result, Cpl. Jenkins and other members of the Missouri State Highway Patrol asked Plaintiff to move from the overpass for traffic safety purposes and not because the troopers disagreed with Plaintiff's politics or found the message offensive. Plaintiff refused to follow Cpl. Jenkins' order, and Cpl. Jenkins arrested Plaintiff for violating Mo. Rev. Stat. § 43.170, willfully opposing or resisting the lawful order of a trooper. Plaintiff was transported to the St. Charles county jail and held for approximately 24 hours. He was never issued a citation or charged with violation of the law. Defendant Colonel J. Bret Johnson is the chief policy maker for the Missouri State Highway Patrol and supervises those who train State troopers. Col. Johnson is unaware of any other arrests for violation of § 43.170 under a similar fact pattern.

Since the date of his arrest, Plaintiff has gone to the same and other overpasses in the St. Louis region to join in "Overpasses against Obama" protests. Plaintiff has not been arrested. Nevertheless, he states he is afraid of future arrests.

Plaintiff filed a First Amended Complaint on May 12, 2015 seeking, *inter alia*, to preliminarily and permanently enjoin Defendant Col. Johnson from enforcing the portion of Mo. Rev. Stat. § 43.170 which states, "any person . . . who willfully . . . opposes a member of the patrol in the proper discharge of his duties shall be guilty of a misdemeanor."

## CONCLUSIONS OF LAW

The "issuance of a preliminary injunction depends upon a 'flexible' consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729 n.3 (8th Cir. 2008) (quoting *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). "At the base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. "When considering a 'duly enacted state statute,' a court must 'make a threshold finding that [the plaintiff] is likely to prevail on the merits.'" *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (quoting *Planned Parenthood*, 530 F.3d at 732-33).

The Missouri statute at issue provides:

> It shall be the duty of the operator or driver of any vehicle or the rider of any animal traveling on the highways of this state to stop on signal of any member of the patrol and to obey any other reasonable signal or direction of such member of the patrol given in directing the movement of traffic on the highway. Any person who willfully fails or refuses to obey such signals or directions or who willfully resists or opposes a member of the patrol in the proper discharge of his duties shall be guilty of a misdemeanor and on conviction thereof shall be punished as provided by law for such offenses.

Mo. Rev. Stat. § 43.170. Plaintiff contends that the enforcement of the statute against him permits a trooper to use the rationale of traffic safety to impose a restriction on First Amendment speech without sufficient guidelines for the trooper. Plaintiff concedes that the State may enforce regulations of time, place, and manner of expression that are content neutral, narrowly

3

tailored to serve a significant governmental interest, and leave open ample alternative channels of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). However, Plaintiff argues that the statute is overbroad and therefore unconstitutional as applied to him.

## Likelihood of Success on the Merits

The Court finds that Plaintiff's argument is flawed in that Mo. Rev. Stat. § 43.170 does not target conduct that is protected by the First Amendment. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, while Cpl. Jenkins asked the protesters to disperse due to safety concerns, he arrested Plaintiff for willfully resisting or opposing the order of an officer, which is clearly set forth in the statute.

Plaintiff relies on *Stahl v. City of St. Louis*, 687 F.3d 1038 (8th Cir. 2012) for the proposition that the ordinance is unconstitutional because it does not provide people with fair notice of when their actions are likely to become unlawful. In *Stahl*, Plaintiff challenged a city ordinance that explicitly prohibited signs or activities where the gathering stopped or impeded pedestrians or vehicular traffic. *Id.* at 1038. The court acknowledged that governmental entities have the power to prevent potential traffic obstructions before they happen. *Id.* at 1040. However, in *Stahl*, the court found the ordinance distinguishable because the law criminalized speech that had the consequence of obstructing traffic but did not provide notice to people that the speech was unlawful until after the obstruction occurred. *Id.* at 1041. The court held that the "ordinance criminalize[d] activity based primarily on often unpredictable reactions of their parties rather than directly on a person's own actions, and it excessively chill[ed] protected First Amendment activity." *Id.* at 1042.

4

Here, however, the statute as issue is clear and provides notice that person commits a misdemeanor when he or she willfully resists or opposes a member of the patrol in the proper discharge of his duties. Plaintiff knew he was opposing Cpl. Jenkins' order to leave the overpass due to traffic safety concerns, and in particular he was aware of several accidents in the area to which the protesters' presence likely contributed. While Plaintiff cites to cases where the statute or ordinance targets speech, this case is more akin to *McDermott v. Royal*, 613 F.3d 1192 (8th Cir. 2010). In *McDermott*, the plaintiff was arrested for obstructing police officers who arrested her son. *Id.* at 1193. The ordinance made it unlawful to "'resist or obstruct a city officer making an arrest . . . or attempting to execute any other duty imposed on him by law.'" *Id.* (quoting Springfield, Missouri Ordinance Section 78-32(1)). The court had to determine whether the Ordinance could be invalidated as overbroad by considering "whether it reached a substantial amount of conduct protected by the First Amendment, even if it also had a legitimate application."[1] *Id.* (citing *City of Houston v. Hill*, 482 U.S. 451, 458-59 (1987)). The *McDermott* court upheld the Ordinance, finding the terms "obstruct" and "resist" covered only physical acts or fighting words and did not provide the officers with unfettered discretion to make arrests for mere words that annoyed them. *Id.* at 1194; *see also Virginia v. Hicks*, 539 U.S. 113, 124 (2003) (finding that a written provision authorizing the police to arrest those returning to court after receiving a barment notice did not violate the First Amendment regardless of whether they sought to engage in speech on their return); *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 482 (6th Cir. 2009) (finding an ordinance prohibiting a person from resisting a police officer while in the discharge of his duty or from interfering with or hindering him with the

---

[1] The Court is aware that Plaintiff is making an "as applied" argument and not attempting to invalidate the entire statute. However, the cases involving similar statutes subject to First Amendment challenges are instructive in the instant case.

5

discharge of his duty was not unconstitutional either on its face or as applied because the ordinance suggested physical interference, not speech, and the officers were justified in entering the home without a warrant). Here, Plaintiff's nonexpressive conduct of willfully resisting Cpl. Jenkins' order to move, not his speech, brought on the violation. Indeed, Plaintiff does not claim that his verbal challenge to the Cpl. Jenkins was protected political speech. Instead, he challenges a Missouri State statute that clearly states that resisting or opposing an officer in the proper discharge of his duties is a misdemeanor.

Further, Plaintiff's "as applied" argument fails. Under Missouri law, "[t]he primary purpose of the highway patrol is to enforce the traffic laws and promote safety upon the highways. As near as practicable all personnel of the patrol shall be used for carrying out these purposes." Mo. Rev. Stat. § 43.025. In addition, "[i]t shall be the duty of the patrol to police the highways constructed and maintained by the commission; to regulate the movement of traffic thereon . . . ." Mo. Rev. Stat. § 43.160. "It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others." *Frye v. Police Dep't of Kansas City, Mo.*, 260 F. Supp. 2d 796, 799 (W.D. Mo. 2003).

Plaintiff does not argue that these statutes giving authority to officers to regulate traffic and promote traffic safety are unconstitutional. Plaintiff argues that the despite this authority, and despite the stipulated facts that traffic was unusually heavy that day and resulted in several accidents near the overpass, an officer should never be allowed to order peaceable political protesters on public overpasses in Missouri to move, and then arrest or threaten to arrest them under the statute for willfully opposing the order. (Pl.'s Proposed Findings of Fact, pp. 12-13,

ECF No. 51) "[T]he Supreme Court 'has regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *Frye v. Kansas City Mo. Police Dep't*, 375 F.3d 785, 790 (8th Cir. 2004) (quoting *United States v. Grace*, 461 U.S. 171, 177-78 (1983) (internal quotation omitted)).

In *Frye,* individuals assembled at the intersection of two heavily trafficked roads to protest abortion. *Id.* at 788. After receiving complaints about offensive signs, officers told the protesters they could demonstrate so long as they did not create a traffic hazard. *Id.* However, upon observing heavy traffic and near accidents, as well as receiving complaints about the graphic signs impairing motorists' ability to safely control their vehicles, an officer asked the protesters to move to avoid creating a hazard to public safety. *Id.* After several protesters refused, the officer arrested them for violating a city loitering ordinance. *Id.* The protesters filed a civil rights action, alleging that the police officers violated their First Amendment rights to free speech and assembly. *Id.* at 788-89. The Eighth Circuit Court of Appeals held that the district court properly granted summary judgment for the city because the protest took place in a heavily trafficked intersection during a busy part of the day; officers observed that the protest was creating a traffic hazard; motorists complained about the photos impairing their driving ability; and the officers were "entitled to decide that the situation presented a danger before the accident occurred." *Id.* at The *Frye* court specifically noted that while the protesters had a First Amendment right to advocate their cause, the First Amendment did not give them a "'right to dictate the *manner* in which they convey their message within their chosen avenue.'" *Id.* at 792 (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 641 (9th Cir. 1998)). The court agreed with the Ninth Circuit's holding "that the restriction on the manner of the protest 'was permissible in

7

light of the City's substantial interest in requiring drivers to devote greater attention to driving conditions and road signs.'" *Id.* (quoting *Foti*, 146 F.3d at 642).[2]

Similarly, in the present case, Defendants exercised their discretion in determining that the protests in that particular area and manner created a traffic safety hazard. Plaintiff acknowledges that the St. Charles police ordered the protesters to move from the overpass earlier that same day. Plaintiff does not argue that the Cpl. Jenkins did not provide alternative means to express his views. Indeed, the officer informed the protesters they could return another day, and, in fact, they have done so on many occasions with no incident. Cpl. Jenkins placed reasonable restrictions on the location of the protest to protect public safety under his statutory and traditional police power to regulate traffic and promote safety. The restriction on that specific day was not aimed at the content of the message, was narrowly tailored to serve the government's interest in public safety, and allowed Plaintiff to return to that overpass, and others, on multiple occasions. Further, and more importantly, the use of the statute at issue here was not in response to Plaintiff's exercise of free speech but to his conduct in willfully opposing Col. Jenkins' order to disperse. Therefore, the Court finds that Plaintiff is unlikely to succeed on the merits of his First Amendment claim.

## Threat of Irreparable Harm

Plaintiff argues that the loss of his First Amendment freedoms constitutes irreparable harm. First, the Court reiterates that Plaintiff was not arrested for exercising his right to free

---

[2] In *Stahl*, the Court distinguished *Frye* because "the challenge was to the police officer's conduct in a particular situation, not to the ordinance under which the police officer acted." 687 F.3d at 1040 n.1. While Plaintiff purports to challenge the statute under which he was arrested, the officer did not use that statute to order the protesters to move due to traffic safety concerns. Plaintiff's challenge is directed at the officer's conduct in restricting the protest location to protect public safety, which the Eighth Circuit has found to be constitutional. *Frye*, 375 F.3d at 790.

8

speech. He opposed the officer's order to leave the overpass. Certainly, should the Plaintiff again oppose an order, an officer can invoke the Statute. However, Col. Johnson noted that the statute was used in the context of protesters on a single occasion, the date Plaintiff was arrested. Nothing in the facts indicates that Plaintiff's fear of arrest for protesting is legitimate.

Even assuming that the statute implicates Plaintiff's First Amendment rights, Plaintiff cannot show irreparable harm. While the United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," the Court noted that preliminary injunctive relief was warranted where the injury was threatened and occurring at the time of the motion, and the respondents demonstrated a probability of success on the merits. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Such is not the case here, where Plaintiff returned to the same overpass and other overpasses in the St. Louis area without incident, and Plaintiff has not established a likelihood of success on the merits.[3] Although Plaintiff expresses a fear of future arrest, Plaintiff has not shown that the "'harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

### Public Interest and Balance of Harms

Plaintiff argues that the denial of Plaintiff's constitutional rights is a significant harm, and any harm to Defendants is negligible. Plaintiff overlooks Defendants' task of enforcing traffic laws and promoting highway safety. Plaintiff asks for an injunction that would prevent officers from exercising these duties where protesters are peaceably assembling. As previously stated,

---

[3] Plaintiff filed this lawsuit 17 months after his arrest without any similar incidents occurring either during that time or after, thus contradicting his allegations of irreparable harm. *Novus Franchising*, 725 F.3d at 895 (citing *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977)).

9

"[t]he First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others." *Frye*, 260 F. Supp. 2d at 799. Further, "[b]oth the defendants and the public have a legitimate interest in maintaining order and protecting the public safety. *Abdullah v. Cty. of St. Louis, Mo.*, 52 F. Supp. 2d 936, 948 (E.D. Mo. 2014).[4] The Court finds that police officers' interest in enforcing the traffic laws, promoting safety upon the highways, and regulating traffic flow, as well as the public's interest in highway safety, outweighs any harm to the Plaintiff. Indeed, as stated above, Plaintiff, who continues to freely protest, has not demonstrated any irreparable harm. Thus, the Court finds that preliminary injunctive relief is not warranted, as the balance of equities does not favor the Plaintiff such that the court must intervene to preserve the status quo until it can determine the merits. *Dataphase*, 640 F.2d at 113.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's First Amended Motion for Preliminary Injunction (ECF No. 22) is **DENIED.**

Dated this 28th day of October, 2015.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

---

[4] The *Abdullah* case is inapposite to the present facts. There, the defendants applied a "keep-moving" policy to peaceful protests, and the court found that the unwritten policy to order protesters to keep moving whenever the officer deemed appropriate was entirely arbitrary, and the public interest in maintaining order and public safety did not outweigh the core constitutional rights of assembly and speech. 52 F. Supp. at 948. In that case, protesters were ordered to keep moving for no reason other than they were peacefully standing on the public sidewalks. *Id.* at 944. Here, however, Cpl. Jenkins exercised his statutory authority to promote public highway safety, and there were numerous accidents around the overpass where Plaintiff was protesting, demonstrating a public safety issue.

10