UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JIMMY DUANE WEED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15CV140 RLW |
| | ) |
| CORPORAL T.R. JENKINS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 59) and Plaintiff's Rule 56 Motion for Partial Summary Judgment as to Cpl. Jenkins' Liability and Col. Replogle's *Monell* Liability (ECF No. 58). The motions are fully briefed and ready for disposition.

## Background

On September 10, 2015, the parties filed a 9-page Stipulation of Facts pertaining to Plaintiff's Motion for Preliminary Injunction. Both parties have also submitted additional facts in support of their summary judgment motions. Based on these submissions, the Court sets forth the following facts:

On the morning of Saturday, August 17, 2013, Plaintiff and a group of citizens gathered on the sidewalk of the "Fairgrounds" overpass on Interstate 70 ("I-70") in St. Charles County, Missouri to protest the policies of President Barack Obama. (Stipulation of Facts ("Stipulation") ¶ 1, ECF No. 46; Defs.' Statement of Uncontroverted Material Facts ("DSUMF") ¶ 5, ECF No. 60-1) The group was called "Overpasses against Obama." (Stipulation ¶ 2) Plaintiff and other protesters displayed political signs, banners, and flags to cars on the overpass and driving on the

interstate below in both directions. (Stipulation ¶ 3, DSUMF ¶ 6) Plaintiff's sign stated "Impeach Obama." (DSUMF ¶ 7)

Traffic congestion on I-70 that particular day was heavier than a normal weekend day due to highway construction and the Festival of the Little Hills taking place in downtown St. Charles, Missouri. (DSUMF ¶¶ 10-11; Pl.'s Response to DSUMF ¶ 10) Motorists traveling eastbound on I-70 were using the Fifth Street exit just east of the overpass to travel to the Festival. (DSUMF ¶ 11) The left lane of eastbound I-70 was closed due to construction on a nearby bridge. (DSUMF ¶ 12) In addition, there was construction at the stoplight on Fifth Street which regulated traffic merging onto Fifth Street from eastbound I-70. (DSUMF ¶ 13) As a result of this construction and heavy traffic, eastbound I-70 was intermittently congested around and below the overpass. (DSUMF ¶ 14) Near the overpass, there were also Missouri Department of Transportation ("MODOT") signs, construction signs, commercial billboards, and commercial buildings with signs. (Stipulation ¶¶ 26-29)

Between 9:30 a.m. and 2:00 p.m. on August 17, 2013, five accidents occurred on eastbound I-70 around and below the overpass. (DSUMF ¶ 16) Defendant Corporal Jenkins investigated the first accident, which occurred shortly before 10:00 a.m. and before the protesters arrived. (DSUMF ¶ 18; Pl.'s Statement of Undisputed Additional Material Facts ("PSUMF") ¶ 5, ECF No. 66) However, during Cpl. Jenkins' investigation, a MODOT employee told Jenkins he believed the protesters were causing a traffic safety hazard. (DSUMF ¶ 19) A second crash occurred at 11:07 a.m. in the right lane of eastbound I-70 just west of the overpass. (DSUMF ¶ 23) The investigator, Trooper K. Brown observed that drivers were making evasive maneuvers and honking their horns, which she conveyed to Cpl. Jenkins. (DSUMF ¶¶ 24-25)

2

The third accident involved a motorcycle and occurred under the overpass on eastbound I-70. Trooper E. Grass investigated, and the motorcyclist indicated that he was distracted by the protesters. Trooper Grass informed Cpl. Jenkins that she believed the protesters were creating a traffic safety hazard which caused or contributed to the traffic accidents on I-70. (DSUMF ¶¶ 26-28) Cpl. Jenkins called his sergeant, Defendant Colonel Ronald K. Replogle, and informed him of the numerous accidents at the overpass, heavy traffic congestion, motorists' complaints that the protesters were distracting, and Trooper Grass' belief that the protesters were creating a traffic safety hazard. (DSUMF ¶¶ 2, 30) The sergeant suggested that Cpl. Jenkins take a wait and see approach and also indicated that Cpl. Jenkins would have the authority to remove the protesters if it became more apparent that they were creating a safety hazard. (DSUMF ¶ 32)

A fourth accident occurred around 1:30 p.m. in the right hand lane of eastbound I-70. Trooper Grass investigated the accident, and one of the drivers and a passenger stated that they believed the accident happened because too many people were looking at the protesters instead of paying attention to the road. (DSUMF ¶¶ 33-36) Trooper Grass also observed that the traffic was backed up below the overpass, and approaching vehicles honked at the protesters. In addition, Trooper Grass saw numerous vehicles make unsafe lane changes, drivers slam on their brakes, and vehicles run off the road to avoid collisions. Trooper Grass was nearly struck by a car that swerved to avoid another vehicle. (DSUMF ¶¶ 37-39)

Around 1:45 p.m., a fifth accident occurred, when a car traveling eastbound on I-70 rear-ended another vehicle under the overpass. The driver and passengers in the rear-ended car told Trooper Grass that the protesters were distracting drivers and were going to cause more accidents. (DSUMF ¶¶ 40-41) When Cpl. Jenkins arrived at the scene, he noticed that traffic congestion was heavier than before, and he observed that traffic in both directions appeared to be

3

honking at the protesters on the overpass. (DSUMF ¶¶ 42-44) After observing the traffic conditions and speaking with Trooper Grass, Cpl. Jenkins determined the protesters were creating a traffic hazard and causing or contributing to crashes around the overpass. (DSUMF ¶ 48) Cpl. Jenkins therefore decided the protesters should be removed from the overpass. (DSUMF ¶ 51)

The Missouri State Highway Patrol ("MSHP") asked the City of St. Charles to remove the protesters, but a supervisor said the city would not take action. The MSHP dispatcher indicated that St. Charles would not take action because the city did not have an ordinance that regulated protest activity. (DSUMF ¶ 52, 54) As a result, Cpl. Jenkins and other members of the MSHP approached the protesters. Plaintiff and a fellow protester, Marc Messmer, asserted that they had a right to be on the overpass and asked which law permitted the MSHP to make them leave. (DSUMF ¶¶ 56-58, 69-71) An MSHP officer, Corporal Matt Schmidt explained that the protesters were causing a traffic safety hazard and needed to leave the overpass. However, Cpl. Schmidt explained that the protesters could return another time but had to leave that day due to traffic issues. (DSUMF ¶¶ 72-73) Plaintiff did not believe that he and the other protesters had any causal link to the accidents. (PSUMF ¶ 12, ECF No. 58-1) Plaintiff stated that he did not believe he needed to leave because he was merely asked and not told to leave. Cpl. Jenkins informed Plaintiff that if he did not leave, he would be arrested. (DSUMF ¶¶ 74-77) After Plaintiff informed Cpl. Jenkins that he would not leave, Cpl. Jenkins arrested Plaintiff and Mr. Messmer for willfully opposing the order of a member of the MSHP in contravention of § 43.170 of the Missouri Revised Statutes. (DSUMF ¶¶ 79-81) Plaintiff and Mr. Messmer were the only protesters who refused to leave the overpass and the only protesters who were arrested. (DSUMF ¶¶ 83-84) Cpl. Jenkins testified that he did not arrest Plaintiff because he disagreed

4

with Plaintiff's political views or the political message the protesters were trying to convey. (DSUMF ¶ 85)

Plaintiff returned to the same overpass to protest one week later, on August 24, 2013. Over 100 people attended the protest, and no one was arrested. Plaintiff has attended a total of six other protests on overpasses since August 17, 2013 and has not been arrested or threatened with arrest. (DSUMF ¶¶ 90-93) However, Plaintiff contends that he is afraid he will be arrested in the future. (Stipulation ¶ 53) Defendant Col. Replogle was the Superintendent of the MSHP on August 17, 2013, and Defendant Colonel J. Bret Johnson is the current Superintendent. (DSUMF ¶¶ 2-3) Col. Johnson is not aware of any other situation during which a protester was arrested for violating Mo. Rev. Stat. § 43.170. (DSUMF ¶ 98) Cpl. Jenkins has used that statute only two other times, and both occasions did not involve protesters. (DSUMF ¶¶ 100-101)

Plaintiff filed a First Amended Complaint on May 12, 2015 under 42 U.S.C. § 1983. (Pl.'s First Am. Compl., ECF No. 31) In his complaint, Plaintiff claims that Cpl. Jenkins unlawfully arrested Plaintiff in violation of the Fourth Amendment to the United States Constitution (Count I); Cpl. Jenkins violated Plaintiff's First Amendment rights by chilling his speech and his right to assemble (Count II); and Col. Replogle, in his individual capacity, violated 42 U.S.C. § 1983 by causing the wrongful arrest of Plaintiff and by chilling thirst amendment speech and assembly (Count III). Plaintiff also seeks declaratory judgment against Col. Johnson in his official capacity to declare a portion of Mo. Rev. Stat. § 43.170 unconstitutional (Count IV); injunctive relief to preliminarily and permanently enjoin the enforcement of a portion of Mo. Rev. Stat. § 43.170 by Col. Johnson in his official capacity (Count V); declaratory judgment against Col. Johnson in his official capacity to declare his custom, practice, and policy of making protesters move (Count VI); and preliminary and

permanent injunctive relief to enjoin the custom and policy of making highway protesters move and/or arresting highway protesters against Col. Johnson in his official capacity (Count VII).

On April 9, 2015, Plaintiff filed a First Amended Motion for Preliminary Injunction seeking to enjoin Defendants from enforcing a portion of Mo. Rev. Stat. § 43.170. (ECF No. 22) The Court denied the motion on October 28, 2015. (ECF No. 53) Then, on November 24, 2015, the Plaintiff filed a Motion for Partial Summary Judgment as to Cpl. Jenkins' Liability and Col. Replogle's *Monell* Liability. (ECF No. 58) Plaintiff contends that he is entitled to summary judgment on his claims for damages against Cpl. Jenkins for wrongful arrest and chilling his First Amendment speech and for Col. Replogle's unconstitutional policy of delegating traffic safety enforcement of Mo. Rev. Stat. § 43.170 against pedestrian protesters to troopers without objective guidelines. Defendants also filed a Motion for Summary Judgment, asserting that no genuine issues of material fact exist, and they are entitled to judgment as a matter of law. (ECF No. 59)

## **II. Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is

discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995).

### III. Discussion

This case involves the interpretation and use of Section 43.170 of the Missouri Revised Statutes which states:

> It shall be the duty of the operator or driver of any vehicle or the rider of any animal traveling on the highways of this state to stop on signal of any member of the patrol and to obey any other reasonable signal or direction of such member of the patrol given in directing the movement of traffic on the highways. Any person who willfully fails or refuses to obey such signals or directions or who willfully resists or opposes a member of the patrol in the proper discharge of his duties shall be guilty of a misdemeanor and on conviction thereof shall be punished as provided by law for such offenses.

Mo. Rev. Stat. § 43.170. Plaintiff's claims pertain to the language in the statute which provides, "any person . . . who willfully . . . opposes a member of the patrol in the proper discharge of his

7

duties shall be guilty of a misdemeanor." Defendants contend that they reasonably applied this statute to Plaintiff, who refused to comply with the order to leave the overpass because the protesters were causing or contributing to accidents on I-70. Plaintiff, on the other hand, claims that he is entitled to judgment as a matter of law because Cpl. Jenkins wrongfully arrested him and chilled his right to First Amendment speech. Additionally, Plaintiff asserts that he is entitled to damages on his claim against Col. Replogle for his delegation policy under the statute.

## A. Fourth Amendment

Plaintiff first claims that Cpl. Jenkins violated Plaintiff's Fourth Amendment rights by arresting Plaintiff without probable cause. Defendant Jenkins argues that he is entitled to summary judgment because he had probable cause to arrest Plaintiff and because he entitled to qualified immunity. "Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' *Habiger v. City of Fargo et al.*, 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would

8

have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

The Fourth Amendment clearly establishes the right of citizens not to be arrested without probable cause. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). However, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman*, 646 F.3d at 522-23 (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Further, arguable probable cause exists when an officer mistakenly makes an arrest under the belief that he or she has probable cause if such mistake is objectively reasonable. *Id.* (citation omitted). "'As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest.'" *Fisher*, 619 F.3d at 816 (quoting *Amrine v. Brooks,* 522 F.3d 823, 832 (8th Cir. 2008)).

Here, Cpl. Jenkins had at least arguable probable cause to arrest Plaintiff without a warrant and is thus entitled to qualified immunity. Cpl. Jenkins decided to remove the protesters

from the overpass due to traffic safety concerns after five accidents occurred in the area. Plaintiff refused to leave the overpass when Cpl. Jenkins directed him to do so. Thus, Cpl. Jenkins had probable cause to arrest Plaintiff without a warrant under Mo. Rev. Stat. § 43.170 for willfully opposing Cpl. Jenkins' order in the proper discharge of his duties.

Specifically, Cpl. Jenkins was directing the movement of traffic and indicated his belief that the protesters were contributing to the traffic issues on that particular date. He ordered the protesters to leave the overpass, and when Plaintiff disagreed with Cpl. Jenkins' reasons for the order, Plaintiff refused to leave the overpass. The pertinent provision of § 43.170 states, a person who willfully opposes a member of the patrol in the proper discharge of his duties, related to the movement of traffic on the highways, shall be guilty of a misdemeanor. Mo. Rev. Stat. § 43.170. Plaintiff mistakes the criminal act in this instance. The act was not expressive conduct of law abiding citizens in protest. The act was opposing the order of an officer in the discharge of his duties to regulate traffic safety.

Further, an officer may rely on an objectively reasonable belief that he had probable cause. *Borgman*, 646 F. 3d at 523. Here, Cpl. Jenkins relied upon third party accounts. He also assessed the situation first hand and relied on his expertise as a police officer. Cpl. Jenkins reasonably believed that the protesters were causing or contributing to a traffic safety hazard and reasonably believed that Plaintiff was refusing to obey Cpl. Jenkins' order related to the direction of movement of traffic on the highways. Plaintiff attempts to create an issue regarding the training of officers to determine when the use of the statute is appropriate. However, "[i]n a claim for damages, officers are 'entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable" – that is, officers are not liable if they had 'arguable probable cause' to make the

arrest." *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012) (quoting *Amrine*, 522 F.3d at 832)). Therefore, the Court finds that the totality of the circumstances as set forth in the information available to Cpl. Jenkins at the time was sufficient for him to arrest Plaintiff for violating Mo. Rev. Stat. § 43.170. Thus, Cpl. Jenkins is entitled to qualified immunity on Plaintiff's claim of unlawful arrest. As a result, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment on Count I of the First Amended Complaint.

## B. First Amendment

Likewise, Plaintiff's claim for damages under a First Amendment theory fails. The Court reiterates that Plaintiff was not arrested for exercising his right to free speech. He opposed the officer's order to leave the overpass due to public safety concerns.

Plaintiff claims that Cpl. Jenkins' order to move was based on a subjective *ad hoc* concern for traffic safety and that the order to move was not the proper discharge of his duties because the order objectively violated the First Amendment by targeting expressive conduct. In support, Plaintiff relies on *Stahl v. City of St. Louis*, 687 F.3d 1038 (8th Cir. 2012). However, the Court finds Plaintiff's reliance misplaced. In *Stahl*, Plaintiff challenged a city ordinance that explicitly prohibited signs or activities where the gathering stopped or impeded pedestrians or vehicular traffic. *Id.* at 1038. The court acknowledged that governmental entities have the power to prevent potential traffic obstructions before they happen. *Id.* at 1040. However, the *Stahl* court found the ordinance distinguishable and held that the "ordinance criminalize[d] activity based primarily on often unpredictable reactions of third parties rather than directly on a person's own actions, and it excessively chill[ed] protected First Amendment activity." *Id.* at 1041-42.

Here, however, the statute at issue is clear and provides notice that person commits a misdemeanor when he or she willfully resists or opposes a member of the patrol in the proper discharge of his duties. The application of the statutory provision was not dependent on the actions or reactions of third parties. Plaintiff knew he was opposing Cpl. Jenkins' order to leave the overpass due to traffic safety concerns, and in particular he was aware of several accidents in the area to which the protesters' presence may have contributed. Plaintiff's conduct of willfully opposing Cpl. Jenkins' order to move, not his speech, brought on the violation. Indeed, Plaintiff does not claim that his verbal challenge to the Cpl. Jenkins was protected political speech. Instead, he challenges a Missouri statute that clearly states that willfully resisting or opposing an officer in the proper discharge of his duties is a misdemeanor. Mo. Rev. Stat. § 43.170.

Further, the Court finds that Cpl. Jenkins was lawfully fulfilling his duty to promote highway safety and protect traffic safety. Under Missouri law, "[t]he primary purpose of the highway patrol is to enforce the traffic laws and promote safety upon the highways. As near as practicable all personnel of the patrol shall be used for carrying out these purposes." Mo. Rev. Stat. § 43.025. In addition, "[i]t shall be the duty of the patrol to police the highways constructed and maintained by the commission; to regulate the movement of traffic thereon . . . ." Mo. Rev. Stat. § 43.160. "It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others." *Frye v. Police Dep't of Kansas City, Mo.*, 260 F. Supp. 2d 796, 799 (W.D. Mo. 2003).

Plaintiff does not argue that these statutes giving authority to officers to regulate traffic and promote traffic safety are unconstitutional. Plaintiff argues that the despite this authority,

Here, however, the statute at issue is clear and provides notice that person commits a misdemeanor when he or she willfully resists or opposes a member of the patrol in the proper discharge of his duties. The application of the statutory provision was not dependent on the actions or reactions of third parties. Plaintiff knew he was opposing Cpl. Jenkins' order to leave the overpass due to traffic safety concerns, and in particular he was aware of several accidents in the area to which the protesters' presence may have contributed. Plaintiff's conduct of willfully opposing Cpl. Jenkins' order to move, not his speech, brought on the violation. Indeed, Plaintiff does not claim that his verbal challenge to the Cpl. Jenkins was protected political speech. Instead, he challenges a Missouri statute that clearly states that willfully resisting or opposing an officer in the proper discharge of his duties is a misdemeanor. Mo. Rev. Stat. § 43.170.

Further, the Court finds that Cpl. Jenkins was lawfully fulfilling his duty to promote highway safety and protect traffic safety. Under Missouri law, "[t]he primary purpose of the highway patrol is to enforce the traffic laws and promote safety upon the highways. As near as practicable all personnel of the patrol shall be used for carrying out these purposes." Mo. Rev. Stat. § 43.025. In addition, "[i]t shall be the duty of the patrol to police the highways constructed and maintained by the commission; to regulate the movement of traffic thereon . . . ." Mo. Rev. Stat. § 43.160. "It is a traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'" *Hill v. Colorado*, 530 U.S. 703, 715 (2000) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others." *Frye v. Police Dep't of Kansas City, Mo.*, 260 F. Supp. 2d 796, 799 (W.D. Mo. 2003).

Plaintiff does not argue that these statutes giving authority to officers to regulate traffic and promote traffic safety are unconstitutional. Plaintiff argues that the despite this authority,

and despite the unusually heavy weekend traffic resulting in several accidents near the overpass, Cpl. Jenkins acted unlawfully by ordering the peaceable political protesters on public overpasses to move, and then arresting protesters under the statute for opposing the order.

"[T]he Supreme Court 'has regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *Frye v. Kansas City Mo. Police Dep't*, 375 F.3d 785, 790 (8th Cir. 2004) (quoting *United States v. Grace*, 461 U.S. 171, 177-78 (1983) (internal quotation omitted)). *Frye* involved individuals protesting abortion at the intersection of two heavily trafficked roads. *Id.* at 788. After receiving complaints about the signs, police officers told protesters they could protest so long as they did not create a traffic hazard; however, an officer later asked the protesters to move for public safety reasons. *Id.* Several protesters refused to move, and the officer arrested them for violating a city loitering ordinance. *Id.* The protesters then filed a civil rights action, alleging that the police officers violated their First Amendment rights to free speech and assembly. *Id.* at 788-89.

The Eighth Circuit Court of Appeals held that the district court properly granted summary judgment for the city because the protest took place in a heavily trafficked intersection during a busy part of the day; officers observed that the protest was creating a traffic hazard; motorists complained about the photos impairing their driving ability; and the officers were "entitled to decide that the situation presented a danger before the accident occurred." *Id.* 791. The *Frye* court specifically noted that while the protesters had a First Amendment right to advocate their cause, the First Amendment did not give them a "'right to dictate the *manner* in which they convey their message within their chosen avenue.'" *Id.* at 792 (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 641 (9th Cir. 1998)). The court agreed with the Ninth Circuit's

13

holding "that the restriction on the manner of the protest 'was permissible in light of the City's substantial interest in requiring drivers to devote greater attention to driving conditions and road signs.'" *Id.* (quoting *Foti*, 146 F.3d at 642).[1]

Likewise, in the instant case, Missouri has a substantial interest in traffic safety on its highways. Nothing in Plaintiff's pleadings indicates that Cpl. Jenkins' decision to arrest him was motivated by Plaintiff's protected speech. Instead, the protesters were ordered to leave the overpass solely on the basis of traffic safety concerns during unusually heavy weekend traffic, motorists' complaints, and officers' exercise of police powers to protect the safety of citizens. *Id.* at 791. The officers clearly informed the protesters that they could return another day; and, indeed, Plaintiff and the other protesters have returned to that exact overpass without incident. The Court finds that Plaintiff's arrest under § 43.170 did not violate his right to free speech.

Further, the Court finds that Cpl. Jenkins is entitled to summary judgment on Plaintiff's First Amendment claim that the arrest chilled Plaintiff's speech.[2] The cases upon which Plaintiff relies are inapposite. In *Mo. Roundtable for Life v. Carnahan*, the court addressed the issue of standing to bring a claim that plaintiffs had been chilled from exercising their First Amendment

---

[1] In *Stahl*, the Court distinguished *Frye* because "the challenge was to the police officer's conduct in a particular situation, not to the ordinance under which the police officer acted." 687 F.3d at 1040 n.1. While Plaintiff purports to challenge the statute under which he was arrested, Cpl. Jenkins did not use § 43.170 as the basis for ordering the protesters to move due to traffic safety concerns. Plaintiff's challenge is directed at the officer's conduct in restricting the protest location to protect public safety, which the Eighth Circuit has found to be constitutional. *Frye*, 375 F.3d at 790.

[2] This is not a First Amendment retaliation claim, as Plaintiff explicitly states he was not arrested in retaliation for protected speech. (Pl.'s Opp. p. 9, ECF No. 61) However, the Court notes that the Eighth Circuit has found that qualified immunity applies in retaliatory arrest claims where an officer had probable cause to arrest the plaintiff. *See Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (finding the officer was entitled to qualified immunity on plaintiff's retaliatory arrest claim because he had at least arguable probable cause for the arrest). Such reasoning applies in this case where Cpl. Jenkins had arguable probable cause to arrest Plaintiff, thus entitling Cpl. Jenkins to qualified immunity.

rights. 676 F.3d 665, 673 (8th Cir. 2012). The *Mo. Roundtable* court recognized that "[a] party can show a cognizable injury by showing that its First Amendment rights have been chilled by harm to reputation or threat of criminal prosecution." *Id.* at 673 (citation omitted). The Eighth Circuit determined, however, that plaintiffs lacked standing "because it has not shown any concrete or particularized injury to its ability to speak." *Id.*

Likewise, Plaintiff's reliance on *Miller v. City of St. Paul* is misplaced. 823 F.3d 503 (8th Cir. 2016). There, the court found that plaintiff, and evangelical Christian, had standing to pursue a § 1983 claim against a police officer who allegedly threatened to confiscate any banners sharing his views at the annual Irish Fair. *Id.* at 505, 507. The court did not address the merits of plaintiff's First Amendment claims.

Here, however, Plaintiff was arrested not for sharing his political views but for refusing to obey an officer's order related to the traffic safety. Although standing is not at issue in the instant case, Plaintiff has failed to allege any particularized injury to his ability to broadcast his message. Instead, he maintains that the damage to his reputation, the fear of re-arrest, and the threat of criminal charges while he was jailed chilled his First Amendment speech. However, Plaintiff concedes that he has protested on overpasses, including the overpass in question since the date of his arrest. "Allegations of a 'subjective chill' are not an adequate substitute for a claim of specific present objective harm or threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Plaintiff's allegations of chilled speech are not only subjective perceptions of a potential future harm, but the allegations have also proven to be unfounded based on Plaintiff's continued ability to exercise his right to free speech. As such, Cpl. Jenkins is entitled to summary judgment on Plaintiff's First Amendment claim.

15

### C. Custom, Practice and Policy of Col. Replogle

Defendant Replogle correctly states that he was not personally involved in the decision to arrest Plaintiff, nor did he have a custom, practice, and policy of delegating traffic safety enforcement to individual troopers, which in turn curtailed First Amendment Speech. However, Plaintiff contends that Col. Replogle is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The plaintiffs in *Monell* challenged the policies of local government units requiring pregnant employees to take unpaid leaves of absence before those leaves were required for medical reasons. *Id.* at 661. The Supreme Court held that a government, under color of some official policy, is liable where it "'causes' an employee to violate another's constitutional rights." *Id.* at 692.

Here, Plaintiff baldly asserts that Col. Replogle employs a policy of delegating traffic safety enforcement to individual troopers to enforce § 43.170, which causes the curtailment of First Amendment speech. However, Plaintiff has failed to demonstrate that Col. Replogle had an official policy, written or unwritten, delegating traffic safety. Instead, as previously set forth, Missouri statutes confer discretion on the highway patrolmen to enforce traffic safety.

Additionally, the facts of this case demonstrate that, unlike *Monell*, the enforcement of traffic safety and the use of § 43.170 did not cause violations of First Amendment rights. In fact, the statute was only enforced in that context on one occasion. Further, Plaintiff is unable to show that Col. Replogle violated the Constitution through his own action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Thus, the Court finds that Defendant

Replogle is entitled to judgment as a matter of law, and Plaintiff's motion for partial summary judgment will be denied.

### D. Constitutionality of Mo. Rev. Stat. § 43.170 and Col. Johnson's Policy

Plaintiff seeks a declaration from this Court that § 43.170[3] is unconstitutional and that Col. Johnson's policy of making highway protesters move is unconstitutional. The Court finds that a motion for summary judgment is a proper vehicle for disposition of a declaratory judgment matter. *See Country Mut. Ins. Co. v. Cronin*, 17 F. Supp. 3d 900, 901 (E.D. Mo. 2014) (granting plaintiff's motion for summary judgment on its declaratory judgment action); *Iams Co. v. Falduti*, 974 F. Supp. 1263, 1269 (E.D. Mo. 1997) ("Summary judgment is suitable in declaratory judgment actions). Further, the Court finds Defendant Col. Johnson is entitled to summary judgment on both claims for declaratory relief. Plaintiff has failed to submit facts demonstrating that § 43.170 is unconstitutional. Further, Plaintiff has not shown that Col. Johnson has a policy of making peaceable assemblies of protesters move from highway overpasses on the basis of distracting traffic below. This incident is the one and only time of arrests of protesters on an overpass.

"A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, while Cpl. Jenkins asked the protesters to disperse due to safety concerns, he arrested Plaintiff for willfully opposing the order of an officer, which is clearly set forth in the statute.

---

[3] Plaintiff asks the Court to declare that the part of Mo. Rev. Stat. § 43.170 stating that "any person . . . who willfully . . . opposes a member of the patrol in the proper discharge of his duties shall be guilty of a misdemeanor" is unconstitutional both facially and as applied to Plaintiff. (Pl.'s First Am. Compl. ¶¶ 118, 143, ECF No. 31)

17

Plaintiff acknowledges that this Court previously declined to enter a preliminary injunction but contends that "declaratory relief is appropriate given Dr. Weed's practice of continuing to protest and the foreseeability that a day may come when the Highway Patrol, charged with regulating Interstate traffic, may again seek to clear protesters based on an *ad hoc* time-place-and-manner regulation." Plaintiff maintains that the Highway Patrol has an immediate and definite policy that continues to affect Plaintiff's present interest in protesting.

While Plaintiff cites to cases where the statute or ordinance targets speech, this Court previously found that the facts are analogous to *McDermott v. Royal*, 613 F.3d 1192 (8th Cir. 2010). In *McDermott*, the Eighth Circuit upheld an ordinance that made it unlawful to "'resist or obstruct a city officer making an arrest . . . or attempting to execute any other duty imposed on him by law.'" *Id.* (quoting Springfield, Missouri Ordinance Section 78-32(1)). The court addressed whether the Ordinance could be invalidated as overbroad by considering "whether it reached a substantial amount of conduct protected by the First Amendment, even if it also had a legitimate application." *Id.* (citing *City of Houston v. Hill*, 482 U.S. 451, 458-59 (1987)). The *McDermott* court upheld the Ordinance, finding the terms "obstruct" and "resist" covered only physical acts or fighting words and did not provide the officers with unfettered discretion to make arrests for mere words that annoyed them. *Id.* at 1194; *see also Lawrence v. 48th Dist. Court*, 560 F.3d 475, 482 (6th Cir. 2009) (finding an ordinance prohibiting a person from resisting a police officer while in the discharge of his duty or from interfering with or hindering him with the discharge of his duty was not unconstitutional either on its face or as applied because the ordinance suggested physical interference, not speech, and the officers were justified in entering the home without a warrant); *Martin v. City of Oklahoma City*, __ F. Supp. 3d __, 2016 WL 1529927, at *12 (W.D. Okla. Apr. 14, 2016) (finding ordinance prohibiting conduct

18

that interferes with a lawful command of a police officer in the discharge of his or her duties by any means "does not cast a broad net over any speech directed toward a policeman, but requires conduct that negatively impacts law enforcement activities").

Here, Plaintiff's conduct of willfully opposing Cpl. Jenkins' order to move, not his speech, brought on the violation. While Plaintiff contends that he was not involved in any physical acts of resistance, video footage of the incident indicates a physical refusal to move, along with opposition to and interference with Cpl. Jenkins' ability to promote highway safety. (DSUMF ¶ 67, Defs.' Ex. H) The statute applies only to those who willfully resist or oppose a member of the patrol and does not provide officers with "unfettered discretion" to make an arrest merely for annoying words. *McDermott*, 613 F.3d at 1194.

In addition, Plaintiff presents no facts in support of his contention that Col. Johnson has a policy of removing highway protesters. As previously stated, Plaintiff has returned to the same overpass and other overpasses to protest without being ordered to leave. Further, Cpl. Jenkins has not used the statute to arrest any other protesters. Therefore, the Court finds that summary judgment in favor of Defendant is warranted on Plaintiff's claim for an order declaring unconstitutional Mo. Rev. Stat. § 43.170 and the alleged policy of making protesters move from highway overpasses on the basis of highway traffic regulation.

### E. Injunctive Relief from Enforcement of § 43.170 and Col. Johnson's Policy

"The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." *Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999) (citation omitted). However, as stated above, Plaintiff is unable to demonstrate success on the merits of his First Amendment claim. Further, for the reasons set forth in this Court's Memorandum and

Order of October 28, 2015, denying Plaintiff's motion for a preliminary injunction, the Court finds that permanent injunctive relief is not warranted, and Defendants are entitled to summary judgment on those counts. (ECF No. 53)

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 59) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Cpl. Jenkins' Liability and Col. Replogle's *Monell* Liability (ECF No. 58) is **DENIED.** A separate Judgment shall accompany this Memorandum and Order.

Dated this 18th day of August, 2016.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**